IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-03722-STV

JEHRONE D. FALLS,

    Plaintiff,

v.

CITY OF AURORA,
DUSTIN PETERSEN,
ZACHARY PLOCH,
JEREMY MCELROY,
CHRISTOPHER C. ELLIS,
JASON ROSENBLATT,
JONAS A. SPITZER, and
UNKNOWN POLICE OFFICERS,

    Defendants.

_____

**MOTION TO DISMISS ON BEHALF OF DEFENDANTS PETERSEN, PLOCH, MCELROY, ELLIS, ROSENBLATT, AND SPITZER**
_____

Defendants DUSTIN PETERSEN, ZACHARY PLOCH, JEREMY MCELROY, CHRISTOPHER C. ELLIS, JASON ROSENBLATT, and JONAS A. SPITZER (collectively, "Defendant Officers"), hereby move to dismiss Plaintiff's Complaint (Doc. 1) pursuant to Fed. R. Civ. P. 12(b)(6) and, as grounds therefor, state as follows:

**CERTIFICATE OF CONFERRAL**

Undersigned counsel has attempted to confer with Plaintiff regarding the relief requested in this motion including two telephone calls and voice mail messages on July

27, 2020, and July 29, 2020. However, undersigned counsel has not heard back from Plaintiff regarding his position and assumes that Plaintiff opposes this motion.

## I. INTRODUCTION

This suit arises from three separate traffic stops on September 2, 2019, September 17, 2019, and November 29, 2019, of Plaintiff involving Defendants Petersen, Ploch, McElroy, Ellis, Rosenblatt, and Spitzer, who are police officers for the City of Aurora, Colorado. On each occasion Plaintiff was pulled over for moving violations and, following further questions from the officers, refused to cooperate. Defendant Officers on each occasion removed Plaintiff from his vehicle and conducted a pat down and protective sweep of Plaintiff's vehicle prior to Plaintiff being released with a summons for the various traffic violations. Plaintiff also alleges that the stops were initiated due to his race. Plaintiff's Complaint alleges claims against the Defendant Officers pursuant to 42 U.S.C. § 1983 and the Fourth Amendment for unlawful search and seizure and false arrest and false imprisonment as well as an equal protection claim. Plaintiff also asserts state tort claims for false arrest and imprisonment, negligence, and intentional infliction of emotional distress. This motion seeks dismissal of the claims asserted against the Defendant Officers.[1]

### A. Allegations in the Complaint

Plaintiff's allegations against Defendant Officers focus on three separate traffic stops which include similar allegations relating to the Officers' conduct.

---

[1] Defendant City of Aurora has filed a separate motion relating to the claims asserted against it.

On September 2, 2019, at approximately 11:33 p.m., Plaintiff was pulled over by Defendant Petersen, who told Plaintiff that he had failed to obey the signal light. Defendant Ploch and other unidentified officers arrived. After checking Plaintiff's identification, Defendant Petersen returned and "demanded him to step out of the vehicle." Doc. 1 at ¶ 19.

However, "[w]hen Plaintiff protested … Defendant Petersen snatched the vehicle door open, put Plaintiff in a twist lock, and pulled him out of the vehicle." *Id.* at ¶ 20. After Plaintiff's person and vehicle were searched "because of Plaintiff's criminal history," Plaintiff was given a ticket for failure to obey a traffic light and told he could leave. *Id.* at ¶¶ 21-23.

On September 17, 2019, at approximately 5:12 p.m., Plaintiff was pulled over by Defendant McElroy who told Plaintiff that his license plate validation tabs were improperly attached. *Id.* at ¶ 36. After checking Plaintiff's identification, Defendants McElroy and Ellis "came back to Plaintiff's vehicle, opened the vehicle's door, put Plaintiff in a twist lock, and pulled him out of his vehicle, without warning." *Id.* at ¶¶ 37-38. After Plaintiff's person and vehicle were searched "because of Plaintiff's criminal history," Plaintiff was given a ticket for having his license plate tabs improperly attached and told he could leave. *Id.* at ¶¶ 43, 47.

On November 29, 2019, at approximately 10:12 p.m., Plaintiff was pulled over by Defendant Rosenblatt, who told Plaintiff that he left a motel parking lot without his headlights on. *Id.* at ¶ 55. After checking Plaintiff's identification, Defendant Rosenblatt "demanded Plaintiff to get out the vehicle" and, after Plaintiff protested, "put Plaintiff in a

3

twist lock, and pulled him out of his vehicle." *Id.* at ¶¶ 57, 59. Defendants Rosenblatt and Spitzer searched Plaintiff's person and vehicle because of Plaintiff's history. Plaintiff was given a "false ticket for not using his headlights" and allowed to leave. *Id.* at ¶¶ 65, 70.

Plaintiff claims that "Defendants intentionally, willfully and wantonly stopped, searched and seized Mr. Falls, as described herein, wholly or due in part to his race." *Id.* at ¶ 73.

## II. STANDARD OF REVIEW

### A.     Fed. R. Civ. P. 12(b)(6)

In reviewing a motion to dismiss for failure to state a claim, the Court will "accept as true 'all well-pleaded factual allegations in the amended complaint.'" *County of Santa Fe v. Public Serv. Co.*, 311 F.3d 1031, 1034 (10th Cir. 2002) (quoting *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)). Factual allegations are "viewed in the light most favorable to the nonmoving party." *Id.* A motion pursuant to Fed. R. Civ. P. Rule 12(b)(6) for failure to state a claim "should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 1034-35. The Court's function when reviewing a motion to dismiss is to "assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Id.* at 1035. In undertaking that review, the court first identifies the allegations in the complaint that are legal conclusions, bare assertions, or merely conclusory. *Ashcroft v. Iqbal*, 566 U.S. 662, 677 (2009). Next, the court considers the remaining factual allegations "to determine if they plausibly suggest an

entitlement to relief." *Id.* at 681. Conclusory allegations are "not entitled to the assumption of truth." *Id.* at 679.

In this case, Plaintiff is proceeding without legal representation. Pleadings drafted by *pro se* litigants are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A "broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Id.* Thus, "in analyzing the sufficiency of the plaintiff's complaint, the court need accept as true only the plaintiff's well-pleaded factual contentions, not his conclusory allegations." *Id.*

### B.  Qualified Immunity

A court that is called on to rule on qualified immunity considers whether the plaintiff has proved that a constitutional violation occurred. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001).  If there has been no constitutional violation, then an officer is entitled to qualified immunity. *Id.*  However, if the facts could establish a constitutional violation, the court must analyze whether the constitutional right alleged to have been violated was "clearly established" at the time of the officer's actions.  *Id.*

Thus, an officer will be entitled to qualified immunity unless "every reasonable official would have understood that what he [was] doing" violated the Constitution. *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011), *quoting Anderson v. Creighton,* 483 U.S. 635, 640 (1987). "This demanding standard protects all but the plainly incompetent

5

or those who knowingly violate the law." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (internal citations and quotations omitted). In applying the qualified immunity analysis, the inquiry must be focused on the circumstances confronted by law enforcement officers. *See White v. Pauly*, 137 S. Ct. 548, 552 (2017) ("Today, it is again necessary to reiterate the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'") (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011).

## III. ARGUMENT

### A. Plaintiff's Fourth Amendment Claims for Relief Must be Dismissed

#### 1. Fourth Amendment Law

Plaintiff's first two claims for relief are asserted pursuant to a § 1983 claim and are for unlawful search and seizure, and false arrest/false imprisonment. A traffic stop is considered a seizure for Fourth Amendment purposes. *United States v. Hunnicutt*, 135 F.3d 1345, 1348 (10th Cir. 1998). The Tenth Circuit has stated, "[a] traffic stop is justified at its inception if an officer has (1) probable cause to believe a traffic violation has occurred, or (2) a reasonable articulable suspicion that a particular motorist has violated any of the traffic or equipment regulations of the jurisdiction." *United States v. Winder*, 557 F.3d 1129, 1134 (10th Cir. 2009).

Moreover, once a stop has been initiated, it has long been permissible for officers to request the driver exit the vehicle for safety reasons. *See Pennsylvania v. Mimms*, 434 U.S. 106, 110 (1977) ("We think it too plain for argument that the State's proffered justification – the safety of the officer – is both legitimate and weighty."). *See also Arizona*

6

*v. Johnson*, 555 U.S. 323 (2009). An officer is then permitted to frisk if a "reasonably prudent" person "in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry v. Ohio*, 392 U.S. 1, 27 (1968). "While reasonable suspicion cannot be based on a mere hunch, it also need not rise to the level required for probable cause, and falls considerably short of satisfying a preponderance of the evidence standard." *United States v. Davis*, 636 F.3d 1281, 1291 (10th Cir. 2011) (quotation marks omitted). Moreover, "[o]fficer safety is the primary objective justifying an officer's right to perform a pat-down search" and the Tenth Circuit has "consistently recognized that the risk to officer safety is heightened by the confrontational nature of the encounter" involved with traffic stops. *United States v. Rice*, 483 F.3d 1079, 1083 (10th Cir. 2007). In evaluating the reasonableness of the search, the court is to consider the totality of the circumstances. *See Florida v. Bostick*, 501 U.S. 429, 436 (1991).

For instance, in *United States v. Hammond*, 890 F.3d 910 (2018), the Tenth Circuit found that factors including gang affiliation (and wearing gang colors during a known ongoing feud), a prior weapons offense, and riding in a car that had previously been seized in connection with a prior arrest created reasonable suspicion to conduct a search. *Id.* at 907-08. Additionally, the time of the stop is relevant. *See United States v. McHugh*, 639 F.3d 1250, 1257 (10th Cir. 2011) ("We have likewise held that the fact that an incident occurred late at night or early in the morning is relevant to the *Terry* analysis.").

Additionally, officers are permitted to conduct protective sweeps of vehicles during a lawful investigatory stop. *See Michigan v. Long*, 463 U.S. 1032, 1051 (1983) ("[T]he balancing required by *Terry* clearly weighs in favor of allowing the police to conduct an

7

area search of the passenger compartment to uncover weapons, as long as they possess an articulable and objectively reasonable belief that the suspect is potentially dangerous.").

The Tenth Circuit has noted that traffic stops are "more analogous to an investigative detention than to a custodial arrest." *United States v. Shareef*, 100 F.3d 1491, 1500 (10th Cir. 1996). "In evaluating the reasonableness of an investigative detention, we make a dual inquiry, considering first whether the officer's action was justified at its inception, and second whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* (quotation marks and citations omitted).

Finally, personal participation is required for demonstrating § 1983 liability. *See Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation."). Although failure to intervene in another officer's unconstitutional conduct may be sufficient to show such involvement, there must be a feasible opportunity to intervene. *See Lusby v. T.G. & Y. Stores, Inc.*, 749 F.2d 1423, 1433 (10th Cir. 1984), *vacated on other grounds*, 474 U.S. 805, 106 S. Ct. 40, 88 L.Ed. 2d 33 (1985).

### 2. Elements Missing from Plaintiff's Claims

Plaintiff alleges that Defendant Officers pulled him over for failure to signal, improperly attached tabs, and failure to use headlights, respectively. However, although Plaintiff implies that these reasons were pretextual, he fails to allege as to the three stops that he had signaled, had properly attached tabs, and had used his headlights.

As there is no allegation that these traffic violations did not take place, the Defendant Officers were justified in initiating the stops.

Additionally, in all three stops, Plaintiff alleges that his criminal history (which he does not deny) was given as the reason for being pulled out of his vehicle, and in one case also admitted that he had hundreds of dollars in a cup holder which was also pointed out by Defendant Rosenblatt during the November 29, 2019, traffic stop. Doc. 1 at p. 5, ¶ 66. Finally, the stops took place at approximately 11:33 p.m., 5:12 p.m., and 10:12 p.m., respectively.

The Defendant Officers permissibly requested that Plaintiff exit the vehicle, with the traffic stops taking place in the evening or at night. Further, upon locating Plaintiff's criminal history, Defendant Officers were appropriately concerned for safety in requesting Plaintiff to step out of his vehicle, conduct a pat down of his person, and conduct a protective sweep of his vehicle. Additionally, the allegations in the Complaint demonstrate Plaintiff's refusal to cooperate with Defendant Officers' requests, up to the point of refusing to obey an order. The time of the stops, Plaintiff's criminal history, and his refusals to cooperate are all factors properly considered in determining whether the officers acted reasonably. These factors are sufficient to support reasonable suspicion that the Defendant Officers could be dealing with an armed and dangerous person and justify the pat down search of Plaintiff. These factors also justify the protective sweep of his vehicle, as well as the amount of time it took to conclude such activities.

The allegations fail to establish Fourth Amendment violations as there was reasonable suspicion to initiate the traffic stops, conduct a pat down search of Plaintiff

9

and protective sweep of his vehicle, and detain Plaintiff for the reasonable amount of time it took to accomplish those things. Accordingly, Defendant Officers acted reasonably with respect to the traffic stop and did not violate Plaintiff's Fourth Amendment rights.

### B.    Plaintiff's Equal Protection Claim Must be Dismissed

#### 1.    Equal Protection Law

Plaintiff's third claim for relief is an equal protection claim asserted against all Defendant Officers. To be successful on such a claim, a plaintiff must demonstrate that he has been treated differently from others similarly situated. *See Requena v. Roberts*, 893 F.3d 1195, 1210 (10th Cir. 2018). In the case of a plaintiff alleging "a claim of racially selective law enforcement, he 'must demonstrate that the defendant's actions had a discriminatory effect and were motivated by a discriminatory purpose.'" *Handy v. Fisher*, 2019 WL 1375677 *3 (D. Colo. Mar. 27, 2019) (unpublished case attached as **EXHIBIT A-1**), *quoting Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1168 (10th Cir. 2003).

Moreover, the discriminatory purpose must be a motivating factor, and "a police officer's pattern of traffic stops and arrests, his questions and statements to the person involved, and other relevant circumstances may support an inference of discriminatory purpose in this context." *Marshall*, 345 F.3d at 1168.

#### 2.    Elements Missing from Plaintiff's Allegations

Plaintiff alleges that "[t]he City of Aurora, and the Aurora Police Department, has a lengthy and well-documented history of racial profiling, unlawful searches and seizures, excessive force, etc." Doc. 1 at p. 7, ¶ 89. Plaintiff then describes other cases in which

Aurora officers allegedly engaged in "misconduct involving African Americans." *Id.* at pp. 8-13, ¶¶ 98-119. However, these other instances (which, with the exception of Defendant McElroy, who was not the initiating officer in the other case, do not involve any of the Defendant Officers) do not supply further insight into the motivation of the three traffic stops involving Plaintiff. The Complaint offers no indication that Defendant Officers were motivated by racial animus in initiating the traffic stop. The Complaint does not include allegations concerning any of the Defendant Officers' prior traffic stops. Mere awareness of race is not sufficient to allege racial animus. *See Green v. Corr. Corp. of America*, 401 F. App'x 371, 376 (10th Cir. 2010) ("Mere differences in race do not, by themselves, support an inference of racial animus.").

Plaintiff has failed to plausibly allege a discriminatory motivation or purpose on the part of Defendant Officers and his equal protection claim must be dismissed.

### C.    Individual Defendants are Entitled to Qualified Immunity

As set forth above, Plaintiff has failed to establish a constitutional violation on the part of Defendant Officers. Moreover, Defendant Officers are unaware of any United States Supreme Court or Tenth Circuit precedent that would indicate that Defendant Officers were on notice that their specific conduct violated clearly established law with respect to Plaintiff's claims.

On the contrary, controlling case law, including *Mimms*, *Johnson*, and *Long*, provide authority for the actions taken during the traffic stop. Defendant Officers are not aware of any case sufficiently similar to these circumstances that would put them on notice that their conduct would violate Plaintiff's constitutional rights.

11

### D.     Plaintiff's State Law Claim must be Dismissed

Plaintiff alleges state law claims for false arrest/false imprisonment (four), negligence (five), and intentional infliction of emotional distress (six). Defendant Officers are all Aurora Police Officers and, as such, are public employees as that term is used in the Colorado Governmental Immunity Act (hereinafter "CGIA"). C.R.S. § 24-10-103(4)(a). Defendant Officers are therefore entitled to the protections of the CGIA as to any state law claims.

The Court lacks jurisdiction to hear Plaintiff's state law claims. Defendant Officers are employees of a municipal entity who were acting in the course and scope of their employment and as such the Colorado Governmental Immunity Act applies to tort claims brought against them. Claims four through six are all torts and none of the exceptions to governmental immunity applies to any of these claims. *See* C.R.S. § 24-10-106 and *Allen v. City of Aurora*, 892 P.2d 333, 334 (Colo. App. 1994) (referring to the tort of malicious prosecution); *Goodboe v. Gabriella et. al.*, 663 P.2d 1051, 1054 (Colo. App. 1983) (referring to "the torts of false imprisonment, assault, and battery."); *Coors Brewing Company v. Floyd*, 978 P.2d 663, 666 (1999) ("regarding the tort of intentional infliction of emotional distress"); *Podboy v. Fraternal Order of Police*, 94 P.3d 1226, 1228 (Colo. App. 2004) (referring to negligence as a tort covered by the Colorado Governmental Immunity Act).

Plaintiff's claims are barred as tort claims that do not fit within any of the exceptions to governmental immunity. C.R.S. § 24-10-106. The CGIA provides that governmental entities and employees are immune from suit for all claims which lie in tort, or could lie in

12

tort except in specifically enumerated instances where immunity is waived. *Id.* CGIA exceptions are enumerated at C.R.S. § 24-10-106(1). Because Plaintiff's claims do not fit within any of the exceptions to the CGIA, the Court lacks jurisdiction over this matter and it must be dismissed.

A motion to dismiss for lack of subject matter jurisdiction is governed by the principles embodies in C.R.C.P. 12(b)(1). *Trinity Broadcasting of Denver, Inc. v. City of Westminster*, 848 P.2d 916, 924 (Colo. 1993). As stated therein (analogizing to the Federal Rules):

> If the motion is a factual attack on the jurisdictional allegations of the complaint, such as the timeliness of the notice involved in this case, the trial court may receive any competent evidence pertaining to the motion. See 2A James W. Moore & Jo Desha Lucas, Moore's Federal Practice, P 12.07[2.-1] at 12-47 (2d ed. 1992).

Pursuant to the holding of *Trinity Broadcasting,* questions involving the CGIA must be resolved through application of the principles of Fed. R. Civ. P. 12(b)(1). Moreover, the Court, as finder of the fact on the jurisdictional issues, may receive any competent evidence pertaining to the issue of subject matter jurisdiction. *Id.* Because Defendants Petersen, Ploch, McElroy, Ellis, Rosenblatt, and Spitzer are immune from Plaintiff's claims pursuant to the CGIA, the Court lacks jurisdiction to hear Plaintiff's claims four through six and they must be dismissed for lack of subject matter jurisdiction.

## IV. CONCLUSION

WHEREFORE, for the reasons set forth above, Defendant Officers respectfully request that this Court enter an order dismissing Plaintiff's claims as set forth above, with

prejudice, and for such other and further relief as the Court deems just and proper.

                                          Respectfully submitted,

Date:  July 31, 2020                        s/ Ann B. Smith
                                          Ann B. Smith
                                          VAUGHAN & DeMURO
                                          111 South Tejon, Suite 545
                                          Colorado Springs, CO 80903
                                          (719) 578-5500 (phone)
                                          (719) 578-5504 (fax)
                                          asmith@vaughandemuro.com (e-mail)
                                          ATTORNEY FOR OFFICER DEFENDANTS

## CERTIFICATE OF SERVICE

       I hereby certify that on this 31st day of July, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

**Charles A. Piekarski**
cpiekarski@auroragov.org

and I hereby certify that the foregoing was placed in the U.S. Mail, postage prepaid, and addressed to the following:

Jehrone D. Falls
9995 E. Harvard Ave., #R277
Denver, CO 80231

                                            s/ Ann B. Smith
                                          Ann B. Smith