**EXHIBIT A-1**

**EXHIBIT A-1**

KeyCite Blue Flag – Appeal Notification

Appeal Filed by HANDY, ET AL v. FISHER, ET AL, 10th Cir., July 15, 2020

2019 WL 1375677
Only the Westlaw citation is currently available.
United States District Court, D. Colorado.

Wyatt T. HANDY, Jr and
Ashlee M. Handy, Plaintiffs,
v.
Tera L. FISHER and Brandon
H. Johnson, Defendants.

Civil Action No. 18-cv-00789-RBJ-SKC
|
Signed 03/27/2019

**Attorneys and Law Firms**

Wyatt T. Handy, Jr., Denver, CO, pro se.

Ashlee M. Handy, Denver, CO, pro se.

Rachel Jane Marilyn Bender, Rebecca Philana Klymkowsky, Jefferson County Attorney's Office, Golden, CO, for Defendants.

ORDER

R. Brooke Jackson, United States District Judge

**\*1** This matter is before the Court on the March 4, 2019 Recommendation of Magistrate Judge S. Kato Crews. ECF No. 45. The Recommendation addresses a motion to dismiss by defendants Tera Fisher and Brandon Johnson, both of whom are Jefferson County Sheriff's Deputies. ECF No. 31. Magistrate Judge Crews recommends that I deny this motion to dismiss as to plaintiffs Wyatt Handy, Jr. and Ashlee Handy's Fourth Amendment individual capacity claims. ECF No. 45 at 14. However, he recommends that I grant this motion as to plaintiffs' Fourteenth Amendment individual and official capacity claims, and as to plaintiffs' Fourth Amendment official capacity claims. *Id.* The Recommendation is incorporated herein by reference. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). For the reasons below, the Court ADOPTS the Recommendation.

**I. BACKGROUND**

Taking plaintiffs' well-pled allegations in their complaint as true, I will summarize the relatively straightforward facts. Plaintiffs were driving along Highway 285 to visit a friend in Conifer, Colorado in the early morning of April 14, 2016 when the alleged incident occurred. Complaint, ECF No. 1 at ¶8. Three people were in the vehicle: Mrs. Handy, who is white, was driving; Mr. Handy, who is black, was the front seat passenger; and an unidentified white female passenger sat in the backseat behind Mrs. Handy. *Id.* at ¶9. At approximately 12:43 a.m. plaintiffs stopped in the parking lot of the 24-hour Kum and Go convenience store in Conifer to reprogram their GPS navigational unit. *Id.* at ¶10. As plaintiffs pulled into the Kum and Go located off Highway 285, they noticed Deputy Fisher's patrol vehicle parked in the convenience store's parking lot. *Id.* at ¶12. Mr. Handy alleges that he made eye contact with Deputy Fisher as plaintiffs' vehicle pulled into the Kum and Go parking lot. *Id.* at ¶13.

Within one minute of parking, plaintiffs allege that Deputy Fisher repositioned her patrol car behind plaintiffs' vehicle and activated her emergency lights. *Id.* at ¶15. Because plaintiffs' car faced the Kum and Go building, plaintiffs were boxed in and unable to move their car. *Id.* at ¶16. Apparently Deputy Fisher radioed for backup because within "seconds," several additional officers arrived at the convenience store. *Id.* at ¶¶17–18. Deputy Johnson was one of those officers. With backup in place and their weapons drawn, Deputy Fisher approached the driver's side of the vehicle and Deputy Johnson approached the passenger's side. *Id.* at ¶¶19–20. Deputy Fisher asked Mrs. Handy for her license, insurance, and registration. *Id.* at ¶22. Mrs. Handy complied with the request, and then she explained that she pulled over to reprogram her GPS. *Id.* at ¶¶23–24. Deputy Fisher then asked Mr. Handy for his identification "in a hostile manner." *Id.* at ¶¶24–25. Mr. Handy initially refused to produce identification, but he eventually complied after defendants made clear that he would be arrested if he did not produce identification. *Id.* at ¶¶26–28. Defendants did not request identification from the backseat passenger. *Id.* at ¶31. Defendants released plaintiffs after they verified that there were no outstanding warrants pending against plaintiffs. *Id.* at ¶30.

**\*2** Plaintiffs allege two 42 U.S.C. § 1983 claims against defendants. First, plaintiffs allege an unlawful seizure in violation of the Fourth Amendment. Second, plaintiffs assert

that defendants racially profiled Mr. Handy in violation of the Equal Protection Clause of the Fourteenth Amendment.

## II. STANDARDS OF REVIEW

**A. Magistrate Judge Recommendation.**
When a magistrate judge makes a recommendation on a dispositive motion, the district court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). An objection is sufficiently specific if it "focus[es] the district court's attention on the factual and legal issues that are truly in dispute." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). In the absence of a timely and specific objection, "the district court may review a magistrate's report under any standard it deems appropriate." *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991).

**B. Rule 12(b)(6) – Motion to Dismiss for Failure to State a Claim**
To survive a Rule 12(b)(6) motion, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ). While the Court must accept the well-pled allegations of the complaint as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002), purely conclusory allegations are not entitled to be presumed true, *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, the plaintiff has met the threshold pleading standard. See *Twombly*, 550 U.S. at 556. "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (quoting *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991) ).

**C. Pro Se Litigants.**
When a case involves pro se litigants, courts will review their "pleadings and other papers liberally and hold them to a less stringent standard than those drafted by attorneys." *Trackwell v. U.S. Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007). Nevertheless, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A "broad reading" of a pro se plaintiff's pleadings "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Id*. Pro se parties must "follow the same rules of procedure that govern other litigants." *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (internal quotation marks and citations omitted).

## III. ANALYSIS

On March 18, 2019, still proceeding pro se as they have all along, plaintiffs filed an objection brief to Magistrate Judge Crews's Recommendation. ECF No. 46. Plaintiffs disagreed with Magistrate Judge Crews's conclusion concerning the individual capacity Equal Protection Clause claims. ECF No. 46 at 1. They did not object to Magistrate Judge Crews's findings regarding the official capacity claims. *Id.* On the other side of the aisle, defendants did not object to Magistrate Judge Crews's finding that plaintiffs plausibly allege sufficient facts to sustain a Fourth Amendment unreasonable seizure claim.

**A. Claim One: Unlawful Seizure in Violation of the Fourth Amendment.**
 *3  The Recommendation advised the parties that specific written objections were due within fourteen days after being served with a copy of the Recommendation, and that failure to make timely objections may bar de novo review by the district judge of the magistrate judge's proposed findings and recommendations. ECF No. 45 at 14. Despite this advisement, defendants did not file an objection.

"In the absence of timely objection, the district court may review a magistrate [judge]'s report under any standard it deems appropriate." *Summers v. Utah,* 927 F.2d 1165, 1167 (10th Cir. 1991) (citing *Thomas v. Arn*, 474 U.S. 140, 150 (1985) ). Here, the Court has thoroughly reviewed the Recommendation. I agree with Magistrate Judge Crews that plaintiffs have alleged facts that, if true, suggest that defendants did not have reasonable suspicion that criminal activity might be afoot, i.e., that an investigative stop was appropriate. See *Terry v. Ohio*, 392 U.S. 1, 30 (1968). I express no opinion as to whether plaintiffs will prevail on this claim at later stages in this case, but at the motion to dismiss stage, plaintiffs have adequately pled their claim. Thus, the Court concludes that Magistrate Judge Crews's analysis and

recommendation concerning the allege unlawful seizure is correct, and that "there is no clear error on the face of the record." *See* Fed. R. Civ. P. 72 Advisory Committee's Note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). Accordingly, the Court ADOPTS the Recommendation of Magistrate Judge Crews related to the first claim as the findings and conclusions of this Court.

### B. Claim Two: Racial Profiling in Violation of the Fourteenth Amendment.

As noted above, plaintiffs object to Magistrate Judge Crews's Recommendation that I dismiss the Fourteenth Amendment Equal Protection Clause claim asserted against defendants in their individual capacity. In their objections plaintiffs also clarify that only Mr. Handy asserts an Equal Protection Clause claim. ECF No. 46 at 1.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *Requena v. Roberts*, 893 F.3d 1195, 1210 (10th Cir. 2018) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) ). As such, to adequately plead an Equal Protection Clause claim, Mr. Handy must satisfy this threshold question by alleging facts that defendants treated him differently from others similarly situated. *Id.* "Individuals are 'similarly situated' only if they are alike 'in all relevant respects.' " *Id.* (quoting *Coal. for Equal Rights, Inc. v. Ritter*, 517 F.3d 1195, 1199 (10th Cir. 2008) (quotation marks omitted) ). Moreover, because Mr. Handy's claim is essentially a claim of racially selective law enforcement, he "must demonstrate that the defendant's actions had a discriminatory effect and were motivated by a discriminatory purpose." *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1168 (10th Cir. 2003). "The discriminatory purpose need not be the only purpose, but it must be a motivating factor in the decision." *Id.* "[A] police officer's pattern of traffic stops and arrests, his questions and statements to the person involved, and other relevant circumstances may support an inference of discriminatory purpose in this context." *Id.*

**\*4** This framework is generally the same framework that Magistrate Judge Crews used in his analysis. He first stated the relevant Fourteenth Amendment law. He then analyzed Mr. Handy's allegations concerning similarly situated individuals, or lack thereof, and the demographic data that Mr. Handy presented. Mr. Handy argues that Magistrate Judge Crews applied the wrong analysis because he used the "similarly situated" approach. ECF No. 46 at ¶3. Instead, Mr. Handy asserts that he is "challenging the discriminatory intent of the individual officers, where he's presented direct and circumstantial evidence of discriminatory intent of the motivating factor behind the officers' actions, therefore that's the analysis that should've been used under the circumstances of this case." *Id.* at ¶6. I agree with Mr. Handy that the Recommendation doesn't analyze the "discriminatory effect and purpose" test per se, *See* Recommendation, ECF No. 45 at 12–13, but the fact remains that Magistrate Judge Crews found that plaintiffs' complaint "falls woefully short" of stating an Equal Protection Clause claim. *Id.* at 13. Nonetheless, I will address Mr. Handy's argument that defendants acted with discriminatory intent or purpose.

1. Demographic Data.

Mr. Handy provides general demographic data about the racial and ethnic composition of the city of Conifer. *See* ECF No. 1 at ¶¶48–51. Specifically, he provides that of the 8,348 people who reside in Conifer, only 0.46% are black. *Id.* at ¶49. The same trend is true in Jefferson County, where only 0.94% of the 535,734 residents are black. *Id.* at ¶50. Mr. Handy asserts that this statistical data, along with other facts discussed below in subsection two, is direct evidence of selective law enforcement procedures. ECF No. 46 at ¶¶7–8. I do not agree.

Although plaintiffs can use statistical evidence to show selective law enforcement practices, *See Marshall*, 345 F.3d at 1168, such evidence "alone is rarely enough to show discriminatory purpose." *Blackwell v. Strain*, 496 F. App'x 836, 840 (10th Cir. 2012) (unpublished). The reason is that, to prove an Equal Protection Clause claim, plaintiffs "must prove that the decisionmakers in *his* case acted with discriminatory purpose.' " *Id.* (quoting *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987) (emphasis in original) ). Cases where statistical evidence tend to show intent to discriminate are rare and accepted only in certain limited contexts. *See McCleskey*, 481 U.S. at 292–93, 293 n.12 (summarizing the strong statistical evidence presented in *Gomillion v. Lightfoot*, 364 U.S. 339, 340–41 (1960) and *Yick Wo v. Hopkins*, 118 U.S. 356, 373–74, (1886) ). Generally, statistical data is helpful only where there is an appropriate basis for comparison. *Blackwell*, 496 F. App'x at 842–43 (citing *United States v. Olvis*, 97 F.3d 739, 745 (4th Cir. 1996) ("Without

an appropriate basis for comparison, raw data . ..proves nothing.") ).

Here, plaintiffs' statistical evidence, which is a generous way of classifying the demographic information plaintiffs provide, [1] is insufficient to state an Equal Protection Clause claim. This is because the plaintiffs' complaint has no appropriate basis for comparison. For example, the information sheds no light on the practices of the individual deputies and how often they stop black drivers versus nonblack drivers or drivers of other races or ethnicities. Moreover, the information doesn't provide any information as to how often, for example, these officers stop vehicles after midnight or how often they ask the passenger of a parked car for identification. In short, the demographic data does not address the practices of Deputies Fisher or Johnson to suggest that Mr. Handy's race motivated defendants to act the way they did on the morning in question.

2. Other Facts Alleged in the Complaint.

**\*5** Plaintiffs' Equal Protection Clause claim doesn't rest entirely on their proffered demographic data. Rather, in plaintiffs' objection brief, Mr. Handy points to the following "direct evidence" of discriminatory intent contained in the complaint:

- As plaintiffs pulled into the Kum and Go, Mr. Handy made eye contact with Deputy Fisher, which occurred within seconds of her repositioning her car patrol behind plaintiffs' car. ECF No. 46 at ¶8.

- Defendants approached the vehicle on foot with their weapons drawn. *Id.*

- Deputy Fisher had "no other reason to pull them over, other than Mr. Handy being black, because they didn't commit any traffic offenses or any other crimes." *Id.*

- Deputy Fisher's hostile "demand" that Mr. Handy produce identification was unlawful because he was a passenger. *Id.*

- Deputy Fisher "failed to demand the other passenger, who is white, to produce her identification." *Id.*

- The city of Conifer is a "predominantly white community" where only 0.46% of residents are black. *Id.*

I find that these assertions are too conclusory to state a claim. This is true even though Mr. Handy is not required to provide direct evidence of discriminatory purpose—"discriminatory purpose can be shown with purely circumstantial evidence." *Blackwell v. Strain*, 496 F. App'x at 844 (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266–68 (1977) ). Even assuming it is true that Deputy Fisher made eye contact with Mr. Handy and identified his race on the early morning in question, Mr. Handy cannot possibly know Deputy Fisher's state of mind or whether she had any other reason to stop plaintiffs. Even more telling is that Mr. Handy fails to allege that defendants treated him differently than others similarly situated. The closest he comes to stating that defendants treated him differently because of his race is that defendants did not ask the backseat passenger for identification. This lone fact fails to persuade. First, the complaint admits that defendants treated Mr. and Mrs. Handy, both of whom were sitting in the front seat, the same. Second, Mr. Handy and the unidentified passenger were not similarly situated "in all relevant respects." Mr. Handy was in the front seat; the second passenger was in the backseat. Mr. Handy is male; the second passenger is female. Finally, while it is true that Tenth Circuit precedent allows a court to consider an officer's questions and statements to the person involved to support an inference of discriminatory purpose, again the complaint is completely conclusory and vague. Plaintiffs assert that Defendant Fisher, "in a hostile manner," demanded that Mr. Handy produce identification, ECF No. 1 at ¶65, and further assert that he complied because he was "under the threat of being arrested and understanding that he was not free to leave." *Id.* at ¶66. However, what is missing is any assertion of what defendants actually said to plaintiffs to make him feel this way.

In short, there are no allegations that Deputies Fisher or Johnson pull over or accost black passengers (or drivers) at a higher rate than other nonblack passengers. "For all [I] know, [defendants] behave[ ] in this same manner toward all [drivers and front seat passengers], regardless of their race." *Blackwell*, 496 F. App'x at 846. Instead, plaintiffs rely on Mr. Handy's opinion that plaintiffs' car was stopped and he that was asked for identification solely because of his race. This is insufficient to state an Equal Protection Clause claim.

**\*6** Accordingly, the Court ADOPTS the Recommendation of Magistrate Judge Crews concerning plaintiffs' Equal Protection Clause claim as the findings and conclusions of this Court. This claim is dismissed with prejudice.

## ORDER

(1) The Recommendation of United States Magistrate Judge Crews [ECF No. 45] is AFFIRMED and ADOPTED.

(2) Defendants' motion to dismiss [ECF No. 31] is GRANTED in part and DENIED in part.

**All Citations**

Slip Copy, 2019 WL 1375677

---

Footnotes

1   For example, in *Blackwell*, the plaintiff brought an Equal Protection Clause claim, alleging that he was stopped, detained, and subjected to heightened inspections at the New Mexico port of entry ("POE") because he is black. *Blackwell v. Strain*, 496 F. App'x 836, 837 (10th Cir. 2012) (unpublished). To prove his case, he alleged the following facts:

   law enforcement activities at the POE produce "race[ ] based differentials in outcomes"; his "data tends to show that vehicles operated by Black truckers are subjected to inspections or searches at a much higher rate than vehicles operated by non-Black truckers"; his data "tends to show that when MTD personnel cannot tell the ethnicity of a driver prior to instigating law enforcement activity, the percentage of Black truckers subjected to enforcement activity closely corresponds to the percentage of Black truckers on the road"; there is "a significant disparity between the percentage of Black truckers reporting delays due to inspections and searches (51.7%) and the percentage of other truckers reporting delays (28.3%)"; and "30.6% of the arrests by Officer Strain at the POE are Blacks, even though Black truckers make up only 14.6% of the truckers passing through the POE.

   *Id.* at 841. Yet even this statistical evidence wasn't enough because the statistical data concerned the actions of officers at the POE as a whole, rather than the conduct of the individual defendant that stopped the plaintiff. *Id.* Thus, the Tenth Circuit held that the plaintiff failed to show that the defendant was motivated by a discriminatory purpose. *Id.* at 843.

---

**End of Document**                                    © 2020 Thomson Reuters. No claim to original U.S. Government Works.